IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION


JAMES W. MYART JR.,                        §
                                           §
            *Plaintiff,*                    §            SA-19-CV-00507-OLG
                                           §
vs.                                        §
                                           §
STEVEN P. MACH, DPS, CHAIRMAN;             §
STEVEN C. MCCRAW, DIRECTOR,                §
TEXAS DEPARTMENT OF PUBLIC                 §
SAFETY; RHONDA FLEMING, JACOB              §
LAVENDER, TROOPER, DEPT. OF                §
PUBLIC SAFETY; KENT COLEMAN,               §
TROOPER, TEXAS DEPT. OF PUBLIC             §
SAFETY; ROBERT DRIGGERS,                    §
TROOPER, TEXAS DEPT. OF PUBLIC             §
SAFETY; PHILIP AYALA,  TEXAS               §
DEPARTMENT OF PUBLIC SAFETY,               §
STATE OF TEXAS,  CITY OF SAN               §
ANTONIO, RON NIRENBERG,                    §
MAYOR, CITY OF SAN ANTONIO;                §
WILLIAM P. MCMANUS, CHIEF OF               §
SAN ANTONIO POLICE                         §
DEPARTMENT; AND ERIK WALSH,                §
                                           §
            *Defendants.*                   §

REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns the two motions to dismiss pending in the

above-styled case:  (1) the Motion to Dismiss filed by Defendants Mach, McCraw, Fleming,

Ayala, Driggers, Lavender, Coleman, Texas Department of Public Safety and the State of Texas

[#7]; and (2) the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by

Defendants Mayor Ron Nirenberg, Chief William McManus, City Manager Erik Walsh, and the

City of San Antonio [#8].  All dispositive pretrial matters in this case have been referred to the

undersigned for recommendation pursuant to Western District of Texas Local Rule CV-72 and

1

Appendix C [#4].  The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, it is recommended that Defendants' motions to dismiss be **GRANTED** but that Plaintiff be given an opportunity to attempt to cure his pleading deficiencies by filing a More Definite Statement during the objection period.  This case has also been referred for resolution of non-dispositive pretrial matters.  Thus, in addition to issuing this report and recommendation on the dispositive motions, the undersigned addresses all other pending non-dispositive motions in this case pursuant to 28 U.S.C. § 636(b)(1)(A).

## I.  Procedural Background

Plaintiff James W. Myart, Jr., proceeding *pro se*, originally filed this action in the 224th Judicial District Court of Bexar County, Texas on May 6, 2019, against the Texas Department of Public Safety (hereinafter "DPS"); DPS Chair Steven P. Mack in his Official Capacity; TDPS Director Steven C. McCraw in his Official Capacity; DPS Inspector General Rhonda Fleming in her Official Capacity; DPS Troopers Jacob Lavender, Kent Coleman, Robert Diggers in their Official and Individual Capacities; DPS Commander Philip Ayala in his Official and Individual Capacity; and the State of Texas.  (Orig. Pet. [#1-4] at 2–24.)  By his Petition, Plaintiff alleges that Defendants subjected him to false arrest, racial profiling, and excessive force related to an incident on March 3, 2019, during which officers stopped Plaintiff for speeding and incorrectly suspected that he was driving under the influence when he was in fact having a diabetic episode.  Defendants Mach, McGraw, and Fleming filed a Waiver of Citation on May 8, 2019 and accepted service of Plaintiff's Original Petition.  (Waiver of Citation [#1-7] at 2–4.)

Plaintiff filed a First Amended Petition on May 9, 2019, which added the City of San Antonio, Mayor Ron Nirenberg (misnamed Ron Nurnberg), San Antonio Police Chief William McManus, and San Antonio City Manager Erik Walsh in their Official Capacities.  (First Am.

2

Pet. [#1-9] at 3–26.)  Plaintiff's live pleading alleges both federal civil rights violations pursuant to 42 U.S.C. § 1983 (violation of his right to equal protection, his right to be free from unreasonable search and seizure, his right to be free from excessive force, and his right to be free from false arrest) and state law claims under the Texas Tort Claims Act (intentional infliction of emotional distress, false arrest, and malicious prosecution).  Plaintiff seeks $1.5 million in compensatory and punitive damages.

Defendants Mach, McCraw, and Fleming removed Plaintiff's Amended Petition to this Court the following day on the basis of federal question jurisdiction [#1].  At the time of removal, no other Defendants had been served, and none had waived service.  The City of San Antonio, Mayor Nirenberg, Chief McManus, and City Manager Walsh subsequently consented to removal [#2].  The motions to dismiss currently before the Court were filed shortly thereafter on May 28 and 30, 2019.  The first motion was filed by the "State Defendants" (Mach, McCraw, Fleming, Ayala, Driggers, Lavender, Coleman, DPS, and the State of Texas) [#7] and the second by the "City Defendants" (Nirenberg, McManus, Walsh, and the City of San Antonio) [#8].  Plaintiff's responses to the motions were originally due on June 11, 2019 and June 13, 2019, respectively.  Plaintiff promptly moved for an extension of time to file responses to the motions, which the Court granted on June 7, 2019, giving Plaintiff until July 15, 2019 to file his responses [#10].  The Court subsequently stayed this case pending the resolution of the threshold issues raised in Defendants' motions to dismiss [#14].

Plaintiff did not file his response to either motion by the July 15, 2019 deadline.  Instead, on July 26, 2019, Plaintiff filed a motion requesting a 90-day stay of all deadlines in this case due to Plaintiff's medical issues, including his deadline to respond to Defendants' motions to dismiss.  The Court held a status conference to address the requested stay on August 7, 2019.

3

After hearing the arguments of Plaintiff at the conference, considering Plaintiff's substantial litigation activity in this and other cases leading up to the conference, and reviewing the medical evidence attached to Plaintiff's motion, the Court denied Plaintiff's request for a 90-day stay of the entire case, but stayed all discovery pending the resolution of Defendants' motions to dismiss [#19]. In the same Order, the undersigned ordered that any party seeking to file any document in this case must first seek leave of court. Plaintiff appealed this Order to the District Court and requested the removal of the undersigned from this case, alleging bias. The District Court affirmed the Order denying the 90-day stay and denied Plaintiff's request to remove the undersigned [#26].

Plaintiff filed a response to the State Defendants' motion to dismiss on September 13, 2019 [#31] and a general response to the pending motions to dismiss on October 2, 2019 [#38]. Although these responses were not timely filed, the Court has considered them in ruling on Defendants' motions. Plaintiff also moved for leave to file another 90-day stay of this case on September 25, 2019, which would further delay a ruling on Defendants' motions to dismiss [#35]. A few weeks later, Plaintiff filed a motion to lift the stay and proceed with this case [#49]. In the interim, Plaintiff has filed a number of other motions and appeals to the Fifth Circuit. The undersigned now considers each of these motions in turn.

## II.  Plaintiff's Motion for Leave to File a Motion for 90-Day Stay and Motion to Lift Stay

Plaintiff asks the Court for leave to file another motion for a 90-day stay of this case due to his medical issues. Attached to the motion are over one hundred pages of medical evidence demonstrating that Plaintiff has been hospitalized numerous times in the past several months, has lost eyesight in his right eye, and suffers from end-stage renal disease. (Med. Records [#35-1].) Plaintiff also filed additional supplemental records in support of his motion. (Med. Records

[#36-1].)  In his motion, Plaintiff accuses the undersigned and the District Court of not caring about his medical condition or believing him to be lying to the Court about his illnesses.  To the contrary, Plaintiff has sufficiently documented that he suffers from serious medical conditions, which have at times required his hospitalization.  Nonetheless, the Court will deny leave to file a second request for a 90-day stay for the following reasons.

This case is currently at the preliminary stage in which the Court is asked to decide threshold issues raised in two motions to dismiss filed by Defendants.  At the motion-to-dismiss stage the Court reviews only the plausibility of Plaintiff's pleadings and does not consider any evidence.  Accordingly, there is no need for discovery or any other action by Plaintiff, aside from a response to the pending motions to dismiss or supplemental pleading clarifying Plaintiff's allegations to demonstrate that they give rise to valid causes of action under the law.  Plaintiff has filed responses to Defendants' motions (albeit late ones).  Discovery has been stayed pending the resolution of Defendants' motions. Other than supplementing his pleadings or filing objections, nothing else is required of Plaintiff at this time and a stay of the entire case is unnecessary.

Moreover, even if discovery and other aspects of the litigation were proceeding (and thus a stay would have a bigger impact), the Court would deny the motion.  Plaintiff has filed dozens of pleadings, motions, and appeals in this case and other cases pending before this Court[1] since Defendants filed their motions to dismiss.  He has demonstrated that, although his illness may be serious, he is capable of drafting hundreds of pages of court filings and actively pursuing multiple cases before this Court and others.  Over the past six weeks since the District Court

---

[1]  Four other lawsuits filed by Plaintiff are currently pending before this Court (5:19-CV-702-OLG, 5:19-CV-753-OLG, 5:19-CV-906-OLG, and 5:19-CV-1174-OLG), some of which were newly filed during the time period in which Plaintiff suffered from various medical issues.

affirmed the denial of Plaintiff's request for a stay, in this case alone Plaintiff has filed over twenty motions, responses, pleadings, and appeals. These include two interlocutory appeals to the Fifth Circuit Court of Appeals [#28, #45];[2] five discovery motions [#27, #32, #34, #43, #47]; a motion to appeal a denial of leave to file a discovery motion to the District Court [#29]; a motion to proceed *in forma pauperis* on appeal before the Fifth Circuit [#30]; a motion to recuse the undersigned and Chief Judge Garcia from this case due to alleged bias and discrimination (which was denied) [#41]; and a motion for a status conference [#48].

Finally, Plaintiff has also most recently filed a motion to *lift* the stay in this case [#49], complaining about the delay in the issuance of any rulings in his case and the lack of a scheduling order and a date for trial.[3] It appears therefore that Plaintiff is abandoning his request for a stay. In this filing, Plaintiff indicates that once the Court lifts the current stay, he intends to abandon his two interlocutory appeals, one of which has already been dismissed by the Fifth Circuit. The Court therefore will deny the current pending motion for leave to file a motion to stay and grant in part Plaintiff's motion to lift the stay and proceed with this case.

---

[2] Plaintiff appealed both the denial of a discretionary stay in this case and the denial of his motion to recuse the undersigned and Chief Judge Garcia. Plaintiff's appeal of the denial of a stay was dismissed for lack of jurisdiction as a non-appealable interlocutory order by the Fifth Circuit Court of Appeals on October 17, 2019 [#50]. *See* 19-50840. Plaintiff's appeal of the denial of his motion for recusal [#45] remains pending. *See* 19-50920. The pendency of this appeal does not deprive this Court of jurisdiction to rule on Defendants' motions to dismiss or any other motion in this case because the order Plaintiff is attempting to appeal is a non-appealable interlocutory order. *See Nobby Lobby, Inc., v. City of Dallas*, 970 F.2d 82, 86 n.3 (5th Cir. 1992) (order denying recusal is non-appealable interlocutory order). *See also United States v. Hitchmon*, 602 F.2d 689, 692 (5th Cir. 1979) (notice of appeal from non-appealable order does not deprive trial court of jurisdiction taken in interval between filing of notice and dismissal of appeal) (superseded by statute on other grounds as stated in *United States v. Martinez*, 763 F.2d 1297, 1308 (11th Cir. 1985)).

[3] The undersigned notes that Plaintiff's voluminous filings, including multiple appeals and requests for recusal, have significantly hampered the Court's ability to efficiently dispose of the pending motions that concern preliminary matters in the case.

### III. Defendants' Motions to Dismiss

The Court should grant the motions to dismiss filed by the State Defendants and the City Defendants. The State Defendants move for dismissal under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing (1) the State of Texas, DPS, and Defendants Mach, McCraw, Fleming, and Ayala (each sued in an official capacity) are not "persons" subject to suit under 42 U.S.C. § 1983; (2) Plaintiff has failed to rebut Troopers Driggers, Lavender, Coleman, and Commander Ayala's (each sued in an individual capacity) presumptive entitlement to qualified immunity; (3) Defendants Mach, McCraw, Fleming, Ayala, DPS, and the State of Texas were not personally involved in any of the alleged constitutional violations and cannot be held liable for their subordinates' conduct based on a theory of *respondeat superior*; (4) Plaintiff's state-law tort claims against all Defendants are barred because they do not fall under the Texas Tort Claims Act's limited waiver of liability; (5) insofar as Plaintiff is attempting to sue Defendants under the Texas Penal Code, he lacks standing to do so. The City Defendants have moved for dismissal under Rule 12(b)(6) arguing that Plaintiff fails to allege the personal involvement of any City Defendant in the acts underlying this suit; Plaintiff has failed to allege the City of San Antonio's municipal liability under Section 1983; and Plaintiff has failed to allege any plausible state law claim against Defendants.

### A.      Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a

complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Where a motion to dismiss for lack of jurisdiction is limited to a facial attack on the pleadings, as here, it is subject to the same standard as a motion brought under Rule 12(b)(6). *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

The undersigned is mindful that in evaluating the merits of Defendants' motions to dismiss, a court views Plaintiff's *pro se* pleadings under a less stringent standard than those drafted by an attorney. *See Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983). As a result, Plaintiff's filings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from these pleadings. *See id.* The undersigned does remind the District Court, however, that although Plaintiff is proceeding *pro se* in this case, he did attend law school and previously was a member of the bar, so he has more legal training and experience than a typical *pro se* litigant.

**B.     Factual Allegations in Plaintiff's Live Pleading**

Plaintiff's First Amended Petition, which is the live pleading in this case, contains the following factual allegations: Plaintiff claims that the City of San Antonio and DPS have an agreement to patrol the streets of the black community in San Antonio and to racially profile residents. (First Am. Pet. [#1-9] at 11.) The gravamen of Plaintiff's complaint concerns a traffic stop that occurred on March 3, 2019. Plaintiff alleges he was stopped for driving 48 miles per hour in a 40-mile-per-hour zone by two state trooper vehicles, one containing Troopers Diggers and Coleman and the other containing Trooper Lavender. (*Id.*) According to his pleading, the stop was "due to racial profiling," although Plaintiff does not include specific facts that support this contention and does not dispute that he was speeding. Plaintiff alleges that after he stopped his car, Trooper Diggers asked Plaintiff to get off his vehicle so he could conduct a sobriety test. (*Id.*) Upon completion of the sobriety test, Plaintiff was arrested for driving under the influence, handcuffed, and placed in the back of one of the patrol cars. (*Id.* at 12.) Plaintiff claims that while sitting in the troopers' vehicle, he poured Gatorade onto the troopers' computer because he

was angry about being arrested; this led the troopers to charge Plaintiff with criminal mischief. (*Id.*)

Plaintiff claims he was then placed on the ground outside of the vehicle; Troopers Diggers and Lavender tried to lift him up by his arms and legs; the handcuffs were cutting his wrists and stopping his blood circulation; and he subsequently begged for an ambulance. (*Id.*) Medical personnel were summoned, and when emergency technicians arrived, they informed the troopers that Plaintiff's blood sugar was "seriously high" (at 500), and he needed to go to the hospital immediately. (*Id.*) Plaintiff contends the troopers should have recognized that he was having a diabetic episode and was not under the influence of alcohol, drugs, or medications and should have terminated his arrest at that point. (*Id.* at 12–13.) Plaintiff alleges he was instead transported to an emergency room for treatment; after five hours he was released from the hospital and transported to the City of San Antonio Office of the Magistrate to be charged with driving under the influence and criminal mischief. (*Id.*) Plaintiff claims the medical staff of the magistrate conducted a second medical examination and found his blood sugar to be 600. (*Id.*) Plaintiff alleges he was then transported back to the hospital for further treatment. (*Id.*) Plaintiff does not explain in his Petition what occurred after his second hospitalization with respect to the criminal charges, but he claims that he reported the incident to Commander Ayala and filed an internal affairs complaint with Inspector General Fleming, both of whom were allegedly complicit in failing to remedy and covering up these incidents. (*Id.* at 13–14.)

## C.      State Defendants' Motion to Dismiss

The Court should grant the States Defendants' motion to dismiss. First, the State of Texas, DPS, and Defendants Mach, McCraw, Fleming, and Ayala are not "persons" subject to suit under 42 U.S.C. § 1983 and therefore Plaintiff's official capacity claims against these

Defendants fail as a matter of law. Second, Ayala was not personally involved in any of the alleged constitutional violations, so the individual-capacity Section 1983 claims against him must be dismissed. Third, Defendants Driggers, Lavender, Coleman, and Ayala have all invoked qualified immunity with regard to Plaintiff's individual capacity claims against them and Plaintiff has failed to rebut that qualified immunity applies. Fourth, Plaintiff's Texas tort claims against all State Defendants are barred because they do not fall under the Texas Tort Claims Act's limited waiver of liability. And, finally, to the extent that Plaintiff is attempting to sue any State Defendant under the Texas Penal Code, he lacks standing to do so.

### 1. Official-Capacity Section 1983 Claims Against the State Defendants

Plaintiff's federal claims against the State of Texas, DPS, and DPS employees in their official capacities should be dismissed because these Defendants are not "persons" subject to suit under Section 1983. Plaintiff sues the State of Texas, DPS, and several of its officers in their official capacities (Defendants Mach, McCraw, Fleming, and Ayala) under Section 1983 for alleged violations of his constitutional rights, seeking only monetary damages as opposed to injunctive relief. Section 1983 imposes liability on any "person" who, under color of state law, deprives another "of any rights, privileges, or immunities secured by the Constitution and laws." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing 42 U.S.C. § 1983). The Supreme Court has long held that states, their agencies, and their officials acting in their official capacities are not "persons" subject to suit under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hyatt v. Sewell*, 197 Fed. App'x 370, at *1 (5th Cir. 2006). This is because official-capacity suits merely constitute another way of pleading an action against the entity of which a public officer is an agent. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, suits against state officials in their official capacity should be treated as suits against the State. *Id.*

The Court must therefore dismiss all of Plaintiff's claims arising under Section 1983 asserted against the State of Texas, DPS and Mach, McCraw, and Fleming, as these three Defendants are only sued in their official capacities. Ayala, however, is sued both in his individual and official capacities. The Supreme Court's doctrine set forth in *Will v. Michigan* compels dismissal of Plaintiff's claims against Ayala in his official capacity only. The undersigned will address Plaintiff's individual-capacity claims against Ayala in Sections III.C.2 and III.C.3 *infra*. Additionally, to the extent that Plaintiff is suing Troopers Diggers, Lavender, and Coleman in their official capacities, the Court should dismiss any official-capacity Section 1983 claims against these Defendants for the same reasons.

Had Plaintiff filed this action in federal court,[4] as opposed to state court, the Eleventh Amendment would have also barred his claims against these Defendants. *See e.g. Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Clay v. Tex. Women's Univ.*, 728 F.2d 714, 715 (5th Cir. 1984). The removal of this case to federal court by some of the State Defendants, however, resulted in the waiver of Eleventh Amendment immunity. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002).

### 2. Individual-Capacity Section 1983 Claims Against Ayala

Plaintiff's Section 1983 claims against Commander Ayala in his individual capacity also fail as a matter of law because Plaintiff fails to allege Ayala's personal involvement in the constitutional violations.[5] Qualified immunity shields federal and state officials from individual

---

[4]    Plaintiff has been barred from filing cases in this Court without first obtaining permission from a district judge in this district. *See Myart v. Parker Glosson, et al.*, 5:16-CV-865-XR (Sept. 26, 2016).

[5] Defendants Mach, McCraw, and Fleming also move for dismissal of Plaintiff's Section 1983 claims on this basis. Because the undersigned has concluded that Plaintiff cannot sue these individuals in their official capacities under Section 1983 because they are not persons subject to

liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When the alleged state actor is a supervisor, as with Commander Ayala, there must be allegations of the supervisor's personal involvement in the acts causing the deprivation of constitutional rights or there must be a causal connection between the act of the supervisor and the constitutional violation sought to be redressed. *Gates v. Texas Dep't of Protective and Regulatory Serv.*, 537 F.3d 404, 435 (5th Cir. 2008); *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). There is no vicarious or *respondeat superior* liability of supervisors under Section 1983. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006); *accord Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (holding that under Section 1983, "a government official can be held liable only for his own misconduct").

Plaintiff does not allege that Ayala, Commander of the DPS Patrol Division in San Antonio, was personally involved in his arrest, that Ayala somehow caused or directed his arrest, or that Ayala was a part of any of the incidents surrounding his arrest. The only allegations against Ayala individually contained in Plaintiff's First Amended Petition are statements that Plaintiff reported his wrongful arrest to Commander Ayala *after* the incidents occurred; Ayala informed Plaintiff he had to "go through the criminal charges and [he] agreed with the arrest"; and Ayala is therefore "complicit in the violations and is an accomplice after the fact." (First Am. Pet. [#1-9] at 13.)

---

suit under the Act (and Plaintiff does not sue these individuals in their individual capacities), the Court need not address this argument.

Plaintiff's allegations against Ayala are essentially that he failed to adequately respond to Plaintiff's report of his alleged false arrest and therefore implicitly ratified the alleged unconstitutional behavior of his subordinates. There is no basis in the law for this theory of supervisory liability. *See Camacho v. City of El Paso, Tex.*, No. EP-15-CV-00318-PRM-RFC, 2016 WL 3519662, at *14 (W.D. Tex. June 22, 2016) ("[T]his Court is aware of no cases that impose post-violation ratification liability on a supervisor in his individual capacity."); *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 799 (S.D. Tex. 2013) ("This Court is aware of, and Plaintiffs have cited, no cases that impose liability on a supervisor based on ratification."). In contrast, the Fifth Circuit has indicated that it would recognize a ratification theory of recovery with respect to municipal liability, which is a different issue as it pertains to the liability of the City of San Antonio and its officers, not Ayala in his individual capacity as here. *Hobart*, 916 F. Supp. 2d at 793–94 (citing *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009)).

There are two ways, however, a supervisor may still be held individually liable for the unconstitutional acts of a subordinate without directly participating in the alleged injury: (1) where the supervisor enacted an unconstitutional policy that resulted in the injury; or (2) where the supervisor's failure to supervise or train a subordinate caused the violation and that failure to train amounted to deliberate indifference. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). Plaintiff does not allege facts that implicate either circumstance. Instead, Plaintiff merely makes general allegations that his initial stop was due to racial profiling; that the stop was due to the customs, policies, practices, and procedures of DPS; and that these customs and policies were the moving force behind his alleged constitutional violation. But these conclusory allegations are insufficient to subject Ayala to

14

individual supervisory liability under Section 1983. *See Delgado v. Ratcliff*, 213 F.3d 639, 2000 WL 554940 at *1 (5th Cir. Apr. 18, 2000) (holding that conclusory allegations of supervisory liability were insufficient to support claim for relief).

Nor does Plaintiff allege any facts to support his conclusory allegation that Ayala was deliberately indifferent with respect to training and supervising his subordinate officers, whether concerning racial profiling, differentiating between indicia of intoxication versus a diabetic attack, or any other matter related to the arrest of Plaintiff. Deliberate indifference in the context of a failure to train or supervise requires "actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights." *Porter*, 659 F.3d at 447 (citation and internal quotation marks omitted). To demonstrate that a supervisor had the requisite notice of a deficiency sufficient to establish the supervisor's deliberate indifference, a plaintiff must ordinarily identify "[a] pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Such a pattern is necessary to demonstrate deliberate indifference because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Plaintiff attempts to demonstrate a pattern of racial profiling by including excerpts from newspaper articles from 2004 and 2005 on racial profiling in his Petition. (First Am. Pet. [#1-9] at 4 n.2, 5–6 n.3.) These articles reported that Texas law enforcement agencies consistently search "blacks and Latinos at higher rates than Anglos following a traffic stop." (*Id.*) These articles may generally establish that Texas law enforcement agencies have a history of racial disparity in their treatment of motorists, but they do not sufficiently allege the actual or constructive notice to Ayala to support imposing individual supervisory liability in this case.

The articles rely on studies that are over 15 years old and do not focus on the San Antonio area and have no tie to Ayala. If general awareness that racial disparities exist in law enforcement were enough to establish that a supervisor had notice, that would eradicate the requirement that a supervisor have the specific notice outlined above. The question before the Court is whether Plaintiff has sufficiently alleged a pattern or practice of racial profiling to allege that Ayala had actual or constructive notice of this issue such that he acted with deliberate indifference. *See Connick*, 563 U.S. at 62; *Porter*, 659 F.3d at 447. Plaintiff's allegations are too conclusory to meet this standard. The Court should therefore dismiss Plaintiff's individual-capacity Section 1983 claims against Ayala for this reason as well as the reasons discussed in Section III.C.3 *infra*.

### 3. Individual-Capacity Section 1983 Claims Against the Troopers and Ayala

Defendants move to dismiss Plaintiff's Section 1983 claims against Troopers Driggers, Lavender, and Coleman (the three officers involved in Plaintiff's arrest), as well as Ayala, on the basis of qualified immunity. These claims should be dismissed because the facts alleged in Plaintiff's First Amended Petition fail to rebut Defendants' presumptive entitlement to qualified immunity.

As previously stated, qualified immunity shields federal and state officials from individual liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Al-Kidd*, 563 U.S. at 735. In the context of a qualified immunity analysis, the facts are construed in the light most favorable to the party asserting the injury. *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A right is clearly established for purposes of the second step of the qualified-immunity

analysis if it would be clear to a reasonable official, at the time of the challenged conduct, that his or her conduct violated the statutory or constitutional right at issue. *Saucier*, 533 U.S. at 206. Stated another way, a right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Supreme Court has repeatedly admonished lower courts not to define clearly established law at a high level of generality. *See, e.g.*, *al-Kidd*, 563 U.S. at 742. Rather, the inquiry must be undertaken in light of the specific factual context of the case. *Mullenix v. Luna*, --U.S.--, 136 S. Ct. 305, 308 (2015). The dispositive question is "whether the violative nature of particular conduct is clearly established." *Al-Kidd*, 563 U.S. at 742. Lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

At the motion-to-dismiss stage, as here, the Fifth Circuit requires plaintiffs invoking Section 1983 to plead "specific facts that, if proved, would overcome the individual defendant's immunity defense." *Jackson v. City of Beaumont Police Dept.*, 958 F.2d 616, 620 (5th Cir. 1992) (internal quotation and citation omitted). Accordingly, to rebut the qualified immunity of Defendants Driggers, Lavender, and Coleman, Plaintiff must allege facts that, if proved, establish that these officers violated Plaintiff's clearly established constitutional rights. *Saucier*, 533 U.S. at 206.

Plaintiff alleges four constitutional violations in his First Amended Petition: a violation of his right to equal protection under the Fourteenth Amendment; a violation of his right to be free from unreasonable search and seizure under the Fourth Amendment; a violation of his right to be free from excessive force under the Fourth Amendment; and a violation of his right to be free

from false arrest under the Fourth Amendment. Plaintiff alleges malicious prosecution as well, but there is no freestanding claim under Section 1983 for malicious prosecution. *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003). Again, the Court's evaluation of Defendants' qualified immunity is limited to the facts alleged in Plaintiff's First Amended Petition, which the Court accepts as true at this stage in the proceedings. *Martin K. Eby Const. Co.*, 369 F.3d at 467. The Court addresses each of Plaintiff's alleged constitutional violations in turn.

i. Excessive Force

Plaintiff has not alleged a clearly established violation of his Fourth Amendment right to be free from excessive force. In the qualified immunity context, a plaintiff must allege the following to survive a motion to dismiss on an excessive force claim: (1) an injury; (2) the injury resulted directly and only from the use of force that was clearly excessive to the need; and (3) the force used was objectively unreasonable. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). The only use of force alleged by Plaintiff was the placement of handcuffs on Plaintiff during his arrest and the lifting of Plaintiff by Driggers and Lavender, which allegedly caused the cutting of Plaintiff's wrists and his blood circulation. (First Am. Pet. [#1-9] at 12.)

To be cognizable, the injury underlying an excessive force claim must be more than *de minimus*. *Williams*, 180 F.3d at 703. The Fifth Circuit had held that "handcuffing too tightly, without more, does not amount to excessive force." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). "As [Plaintiff] does not allege any degree of physical harm greater than *de minimis* from the handcuffing, . . . he has not satisfied the injury requirement of a [Section] 1983 claim." *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005). Defendants Diggers, Lavender, and Coleman (as well as Ayala, who was not even directly involved in the arrest) are

therefore entitled to qualified immunity on Plaintiff's claim of excessive force in violation of the Fourth Amendment.

ii.    False Arrest

Plaintiff has not alleged a clearly established violation of his right to be free from false arrest. A claim of false arrest under Section 1983 requires a showing of an arrest despite the lack of probable cause. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn*, 242 F.3d at 313 (internal quotation and citation omitted). Therefore, Troopers Diggers, Lavender, and Coleman (as well as Ayala) are entitled to qualified immunity "if a reasonable officer in [their] position could have believed that, in light of the totality of the facts and circumstances of which [they were] aware, there was a fair probability that [Plaintiff] had committed or was committing an offense." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (internal quotation and citation omitted). The probable-cause inquiry focuses on the facts known to the arresting officer at the time of the arrest, not subsequent developments that might disprove the correctness of a previous police determination that probable cause exists. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Peet v. City of Detroit*, 502 F.3d 557, 565 (6th Cir. 2007).

Accordingly, Plaintiff cannot base a false arrest claim on his allegation that the troopers mistakenly believed him to be intoxicated when he was in fact having a diabetic episode. *See McConney v. City of Houston*, 863 F.2d 1180, 1185 (5th Cir. 1989) (Diabetic arrestee could

"constitutionally be detained for at least four or five hours following a lawful warrantless arrest for public intoxication without the responsible officers having any affirmative duty during that time to inquire further as to whether the person is intoxicated, even if requested to do so."). *See also Wysong v. City of Heath*, 377 Fed. App'x 466, 470 (6th Cir. 2010) ("That the officers later learned that Wysong was a diabetic suffering from low blood sugar does not negate the earlier finding of probable cause."). The troopers here were not required to respond to Plaintiff's request for an ambulance after the sobriety test, but they chose to do so and sent him to a hospital for treatment for his diabetes. (First Am. Pet. [#1-9] at 13.)

Nor is the allegation that the troopers continued to process the arrest after Plaintiff's release from the hospital sufficient to state a plausible false arrest claim. The Fifth Circuit has held that "once a responsible officer actually does ascertain beyond reasonable doubt that one who has been so arrested is in fact not intoxicated, the arrestee should be released." *McConney*, 863 F.2d at 1185. "This rule strikes the proper balance as it prevents the officer responsible from willfully continuing detention of one so arrested who the officer has now actually ascertained beyond reasonable doubt is not intoxicated, without requiring the officer to reassess the initial probable cause finding at every change in circumstances or protestation of the arrestee." *Id.* Plaintiff alleges that upon his release from the hospital, he was transported to the Office of the Magistrate to be charged as opposed to being released. (First Am. Pet. [#1-9] at 13.) Yet Plaintiff concedes that he was charged both with driving under the influence and criminal mischief. The officers therefore still had a proper basis for Plaintiff's continued detention—the criminal mischief charge. Accordingly, Plaintiff cannot base his false arrest claim on the failure of the officers to release him from custody after he was discharged from the hospital. Plaintiff

has not stated a plausible claim that he was falsely arrest, let alone that any Defendant violated his clearly established rights.

### iii.     Unreasonable Seizure

Insofar as Plaintiff is alleging a separate constitutional violation of unreasonable seizure separate and apart from his arrest, Defendants Diggers, Lavender, and Coleman (and Ayala) are entitled to qualified immunity as to this claim as well.  Plaintiff alleges that prior to his allegedly unlawful arrest, he was stopped for speeding and detained for a sobriety test before he was placed under arrest.  (First Am. Pet. [#1-9] at 11.)

The Fourth Amendment protects against unreasonable search and seizure.  The stopping of a vehicle and the detention of its occupants is a "seizure" within the meaning of the Fourth Amendment.  *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979).  "A routine traffic stop is a limited seizure that closely resembles an investigative detention."  *United States v. Shabazz*, 993 F.2d 431, 434–35 (5th Cir. 1993) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). "[P]olice officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot."  *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).  Under the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1 (1968), courts determine the reasonableness of an investigative stop by examining: "(1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." *United States v. Rains*, 615 F.3d 589, 594 (5th Cir. 2010) (quoting *United States v. Stevens*, 487 F.3d 232, 244 (5th Cir. 2007)).

Plaintiff alleges that he was stopped for speeding because he was driving 48 in a 40-mile-per-hour zone, but that he believes the stop was due to racial profiling. (First Am. Pet. [#1-9] at

11.) Plaintiff does not claim that he was not speeding, only that he would not have been stopped for this "minor traffic violation . . . but for the fact that [he] is black." (Pl.'s Resp. [#31] at 3.) These allegations do not state a plausible claim for an unreasonable seizure based on the original traffic stop prior to Plaintiff's arrest because Plaintiff does not dispute that that he was speeding, and his Response concedes he committed a "minor violation." Accordingly, the decision to stop Plaintiff was reasonable under the standard set forth in *Terry v. Ohio*, and Plaintiff's allegations have not rebutted the troopers' (or Ayala's) entitlement to qualified immunity. Of course, selective enforcement of laws can give rise to a violation of a constitutional right, as is addressed in the next section, but stopping someone for speeding who was in fact speeding is not a violation of the constitutional right to be free from an unreasonable seizure.

### iv.  Racial Profiling

Plaintiff alleges that Defendants engaged in unconstitutional racial profiling. This claim fails as a matter of law as well. "'Selectivity in the enforcement of criminal laws is subject to constitutional restraints,' and the rubric for analyzing a racial profiling claim thus draws on 'ordinary equal protection standards.'" *Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). "To state a claim of racial profiling under the Equal Protection Clause and section 1983, a plaintiff must allege that he was treated differently than similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Id.* (citing *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012)).

Plaintiff's Amended Petition does not allege that he was treated differently than any similarly situated non-African American motorist. He merely cites to the articles referenced above that report on a history of racial profiling in law enforcement in Texas. Accordingly,

Plaintiff has failed to allege a plausible equal protection violation, and the troopers and Defendant Ayala are entitled to qualified immunity. *See id.* at 948 (recommending dismissal of equal-protection claim based on racial profiling where plaintiffs only alleged that the general poor treatment of African-American motorists as a "well known fact in Dallas").

### 4. Texas Tort Law Claims Against the State Defendants

Plaintiff's Amended Petition alleges various tort claims under Texas law—intentional infliction of emotional distress, false arrest, and malicious prosecution. "The Texas Tort Claims Act provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing Tex. Civ. Prac. & Rem. Code § 101.023). This waiver of immunity does not extend to claims arising out of intentional torts. *See* Tex. Civ. Prac. & Rem. Code § 101.057 (excluding waiver for a claim "arising out of assault, battery, false imprisonment, or any other intentional tort"); *Morgan v. City of Alvin*, 175 S.W.3d 408, 418 (Tex. App.—Houston [14th Dist.] 2004, no pet.). All of Plaintiff's alleged tort claims fall under the category of intentional torts and therefore must be dismissed due to the immunity of the State Defendants. *See Casanova v. City of Brookshire*, 119 F. Supp. 2d 639, 666 (S.D. Tex. 2000) (intentional torts of intentional infliction of emotional distress, false arrest, and malicious prosecution do not fall under Tort Claims Act's limited waiver of sovereign immunity).

Moreover, the Texas Tort Claims Act provides that "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. & Rem. Code § 101.106(a). "If a suit is filed under this chapter against both a governmental unit and any

of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Id.* at § 101.106(e). Because Plaintiff sues the State of Texas, DPS, and various individual employees, the tort claims asserted against Mach, McCraw, Fleming, Ayala, Diggers, Lavender, and Coleman must be dismissed under the Act's election-of-remedies doctrine. In summary, all of Plaintiff's Texas tort claims fail as a matter of law.

### 5. Claims for Violations of the Texas Penal Code Against State Defendants

Plaintiff's First Amended Petition cites to various provisions of the Texas Penal Code in connection with his allegations that Defendants engaged in "official oppression." (First Am. Pet. [#1-9] at 24.) Insofar as Plaintiff is attempting to bring a private right of action based on a criminal statute, he lacks the standing to do so. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (private citizens lack judicially cognizable interest in prosecution of another). The United States or district attorney may choose to prosecute a person in a criminal proceeding, but violations of criminal statutes do not give rise to a private right of action. *See Carpenter v. Arredondo*, No. SA-16-CV-188-XR, 2017 WL 1424334, at *2 (W.D. Tex. Apr. 10, 2017), *appeal dismissed*, 714 Fed. App'x 416 (5th Cir. 2018) (private citizens generally lack standing to bring claims under the criminal laws). Accordingly, any claim based on the Texas Penal Code should also be dismissed.

In summary, the Court should grant the State Defendants' motion to dismiss in its entirety and dismiss all claims asserted against the State Defendants.

## D. City Defendants' Motion to Dismiss

Plaintiff sues the City Defendants (the City of San Antonio, Mayor Ron Nirenberg, San Antonio Police Chief William McManus, and San Antonio City Manager Erik Walsh) for the same causes of action as he asserts against the State Defendants. (First Am. Pet. [#1-9] at 3–26.)

The City Defendants move to dismiss all of Plaintiff's claims for failure to state a claim upon which relief can be granted. The Court should grant the motion.

### 1. Section 1983 Claims Against the City Defendants

Plaintiff's Section 1983 claims against the City Defendants should be dismissed. As a preliminary matter, Plaintiff's official-capacity claims against employees of the City of San Antonio under Section 1983 are simply another way of asserting a claim against the City of San Antonio itself. *See Hafer*, 502 U.S. at 25. Accordingly, all of Plaintiff's Section 1983 claims against Defendants Nirenberg, McManus, and Walsh in their official capacities should be dismissed, as they are redundant of his claims against the City. *Id.* This leaves only the City of San Antonio as a Defendant with respect to Plaintiff's Section 1983 claims. The Court should dismiss these claims against the City not only because of the defects as to the potential merits of Plaintiff's alleged constitutional violations—the same defects that were explained *supra* and were fatal to his claims against the State Defendants—but also because Plaintiff fails to allege any facts that could plausibly implicate the City's municipal liability.

To impose liability against a municipality under Section 1983, the constitutional violation "must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). In other words, there must be allegations of an official policy or custom that is the "moving force" behind the violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Plaintiff has not identified any such policy or custom. Plaintiff merely alleges, without any specificity, that the City and DPS have an "agreement" to engage in racial profiling and the City "sanctioned" all the actions taken by DPS and its troopers underlying Plaintiff's Amended Complaint. (First Am. Compl. [#1-9] at 11, 20.) The City and its employees are not mentioned

in conjunction with any other factual allegations asserted in Plaintiff's pleadings. These conclusory allegations fail to allege the basic elements of a claim for municipal liability against the City. Accordingly, even if Plaintiff could identify a violation of his federal civil rights, which he has not, he has also not alleged the City of San Antonio was the moving force behind the violation. Plaintiff's allegations fail to state a claim against any of the City Defendants under Section 1983.

### 2. Remaining Claims Against the City

The City Defendants also move to dismiss Plaintiff's claims under the Texas Penal Code. These claims must be dismissed because Plaintiff cannot bring a private right of action based on a criminal statute. *See Linda R.S.*, 410 U.S. at 619. Nor can Plaintiff sue the City Defendants for the intentional torts of intentional infliction of emotional distress or false arrest. A municipality, like the State Defendants, is immune from tort liability for its own acts or the acts of its agents unless the Texas Tort Claims Act waives immunity. *City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex. 1998) (citing Tex. Civ. Prac. & Rem. Code § 101.057). Again, the Texas Tort Claims Act does not waive immunity for claims arising out of intentional torts. Tex. Civ. Prac. & Rem. Code § 101.057.

Finally, the City Defendants point out that Plaintiff mentions negligence and the filing of false reports in his pleadings. Insofar as Plaintiff is attempting to plead a separate negligence claim, this claim also fails as a matter of law. The acts of the DPS employees described in this case (for which Plaintiff claims the City Defendants are liable) are intentional acts related to the decision to stop Plaintiff for a traffic violation and place him under arrest. Plaintiff cannot circumvent the intentional tort exception to the immunity waiver in the Texas Tort Claims Act

by pleading negligence when the events at issue in fact involve intentional acts. *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001).

Nor has Plaintiff asserted any separate claim related to the filing of false reports or the falsification of reports to cover up any misconduct. The only allegations in Plaintiff's First Amended Petition regarding the falsification of reports are that Defendants allowed, tolerated, and encouraged police officers to fail to file complete and accurate police reports, to make false statements, and to coach witnesses to give false information. (First Am. Pet. [#1-9] at 18.) Plaintiff does not specify which report was falsified, the manner in which it was false, or how this allegedly false report violated his rights. Regardless, "[t]he mere existence of a falsified police report does not, by itself, violate a plaintiff's federal rights[,]" as "there is no right to a completely accurate policy report." *Ballard v. Hedwig Vill. Police Dep't*, No. CIV.A. H-08-0567, 2009 WL 2900737, at *4 (S.D. Tex. Sept. 2, 2009), *aff'd*, 408 Fed. App'x 844 (5th Cir. 2011) (quoting *Smith v. Patri*, 99 Fed. App'x. 497 (5th Cir. 2004)). "However, a conviction obtained by a knowingly false police report violates [a] criminal defendant's due process rights; therefore, a police officer who files a false police report upon which a conviction is obtained does not enjoy qualified immunity." *Id.* Plaintiff does not allege that he was wrongfully convicted of any criminal offense in his pleadings. *See id.* Any state-law claim based on the alleged filing of false reports would be an intentional tort and therefore barred due to the City's immunity from suit. In short, all of Plaintiff's claims against the City Defendants should be dismissed for failure to state a claim.

### IV. Plaintiff's Request to Amend

Plaintiff requests the ability to replead and file an amended complaint in his response to Defendants' motions to dismiss. (Resp. [#31] at 3.) Under the Court's Local Rules, when a

party seeks leave to file an amended pleading, the party is required to submit the proposed amended pleading to the Court for consideration. *See* Local Rule CV-7(b). Plaintiff did not do so in this case. While amendment of pleadings is generally permissible early in a case, courts are not required to permit amendment if amendments cannot cure pleadings defects. *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (a court may deny leave to amend where amendment would be futile). That is, of course, why the Court's Local Rules require the submission of the proposed amended pleading at the time leave to amend is requested—so that the proposed amendments can be evaluated to ascertain whether they are futile or cure some or all defects.

Because Plaintiff has not submitted his proposed amended pleading, the undersigned is unable to evaluate whether his supplemental pleadings would cure any of the deficiencies outlined in this Report and Recommendation. Moreover, the majority of the deficiencies identified in this Report and Recommendation do not appear to be curable as the facts as alleged by Plaintiff establish that Defendants are entitled to dismissal of his claims as a matter of law. Obviously, Plaintiff cannot contradict the version of events that he conceded in his live pleading to cure deficiencies. But in certain instances, Plaintiff's factual pleadings may not be incurably deficient, but they are scant and conclusory—for instance, Plaintiff's pleadings regarding Defendants' alleged racial profiling.[6]

Thus, although the undersigned is recommending dismissal of the claims based on Plaintiff's current pleadings, the undersigned will also order that within fourteen days, at the same time that he files any objections to this Report and Recommendation, Plaintiff should file a

---

[6] To clarify, the undersigned is not suggesting that Plaintiff (pre-discovery) is required to identify specific policies or procedures to support his racial profiling claim, but he must allege some facts that support his accusation that his stop involved racial profiling beyond that fact that newspaper articles have documented racial profiling by Texas law enforcement officers.

More Definite Statement in accordance with Rule 12(e) of the Federal Rules of Civil Procedure. That pleading should be in a separate document from his objections to the Report and Recommendation and will enable the District Court to evaluate whether Plaintiff has cured any of the pleading defects at the same time the District Court considers the Report and Recommendation and any objections to it. Plaintiff is warned that failure to file a More Definite Statement by the deadline imposed in this Order will result in the District Court considering the undersigned's recommendation in light of the factual pleadings contained in the First Amended Petition only.

### V. Plaintiff's Motion to Proceed IFP on Appeal and State Defendants' Motion for Leave to Join

Plaintiff has filed a motion to proceed *in forma pauperis* ("IFP") in his appeal of the District Court's order affirming the undersigned's denial of a stay in this case [#30]. Plaintiff's motion asks the Court to waive all costs associated with the filing of his interlocutory appeal due to his indigency. Plaintiff's IFP motion was filed only in the instant case (5:19-CV-507-OLG-ESC). However, the Fifth Circuit consolidated this appeal with Plaintiff's appeals of various interlocutory orders in other cases pending before the Court (5:19-CV-702-OLG-ESC and 5:19-CV-753-OLG-ESC). *See* 19-50840. Because the IFP motion relates to the pending interlocutory appeals in these other two cases, one of the Defendants in 5:19-CV-753-OLG-ESC—Frost Bank—filed a response to the motion in that case in an attempt to demonstrate that Plaintiff has misrepresented his financial condition and is able to pay appellate court costs. The State Defendants then moved for leave to join Frost Bank's response in this case [#42].

In the interim, Defendants also moved to dismiss Plaintiff's appeal for lack of jurisdiction at the Fifth Circuit. The Fifth Circuit granted the motion and dismissed Plaintiff's appeal for lack of jurisdiction and issued its mandate to this Court on October 17, 2019 [#50], effectively

mooting the issues raised in these two motions. The Court will therefore dismiss as moot both Plaintiff's motion to proceed IFP on appeal and the State Defendants' motion to join Frost Bank's response.

## VI. Plaintiff's Motions for Leave to File Motions to Compel Discovery

Plaintiff has also filed four motions for leave to file motions to compel related to a discovery issue: Plaintiff's Second Motion for Leave to File Motion to Compel and for Sanctions Against State and City Defendants and Request for Sanctions Hearing [#32]; Plaintiff's Third Request to File Motion to Compel, for Hearing and Ruling on Request for Sanctions [#34]; Plaintiff's Fourth Motion to Compel and for Sanctions and for Hearing on Related Pleadings [#43]; and Plaintiff's Second Motion for Leave to File Motion to Compel and for Sanctions and Fifth Request for Hearing [#47]. Plaintiff has repeatedly asked for leave to file a motion to compel that seeks his blood toxicology and arrest reports pertaining to the arrest underlying this case, as well as DPS Tracking Manuals.

The Court has already denied one such motion filed by Plaintiff due to the stay of all discovery in this case [#25, #27]. Because the undersigned is recommending that Defendants' motions to dismiss be granted and that all of Plaintiff's claims be dismissed in this case, Plaintiff's four motions for leave to file motions to compel and for hearings will be dismissed as moot. In doing so, the Court also reminds Plaintiff that discovery is not necessary to respond to a motion to dismiss, at which posture the Court is required to accept all well-pleaded allegations in a complaint as true and considers no evidence in resolving the motions. If either of Defendant's dispositive motions required an evidentiary record, the Court would have considered Plaintiff's motions for leave to file a motion to compel on their merits.

## VII.  Plaintiff's Motion for Leave to File an Appeal

Plaintiff has also filed a Motion for Leave to File Appeal to District Judge [#29].  This motion requests leave to appeal two text orders entered on September 10, 2019, which denied Plaintiff's request for leave to file motions to compel and for sanctions related to the arrest and toxicology reports.  The undersigned will grant this motion, as the stay previously entered (but now lifted) never precluded Plaintiff from exercising his right to file an appeal to the District Court or the Fifth Circuit.  If Plaintiff still intends to pursue this appeal of the two September 10 text orders, he should file his appeal of those Orders within 14 days of this Order informing the District Court of the same so that the District Court may consider the appeal along with the report and recommendation in this case.

## VIII.  Plaintiff's Motion for Status Conference

Finally, Plaintiff has filed a Motion for Status Conference by District Judge Only [#48].  Because Plaintiff specifically requests a status conference in front of the District Court, the undersigned declines to rule on this motion, and will leave this motion pending for the District Court's consideration in conjunction with this Report and Recommendation.

## IX.  Conclusion, Recommendation, and Orders

Having considered Defendants' motions to dismiss, Plaintiff's pleadings and responses, the relevant law, and the entire case file, the undersigned recommends that the Motion to Dismiss filed by Defendants Mach, McCraw, Fleming, Ayala, Driggers, Lavender, Coleman, Texas Department of Public Safety and The State of Texas [#7] and the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Mayor Ron Nirenberg, Chief William McManus, City Manager Erik Walsh, and the City of San Antonio's [#8] be **GRANTED**.

Also, in accordance with the foregoing, the undersigned now enters the following orders:

**IT IS ORDERED** that Plaintiff **FILE** a More Definite Statement supplementing his factual pleadings with regard to his existing causes of action **within 14 days** of this Order during the objection period.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Second Motion for 90 Day Stay with Medical Evidence [#35] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Appeal to District Judge [#29] is **GRANTED**. If Plaintiff still desires to appeal the undersigned's text orders dated September 10, 2019 denying Plaintiff's motions for leave to file motion to compel, Plaintiff should file an Advisory with the Court **within 14 days** of this Order during the objection period.

**IT IS FURTHER ORDERED** that the following motions are **DISMISSED AS MOOT**:

- Plaintiff's Motion to Proceed *In Forma Pauperis* on Appeal [#30].

- Plaintiff's Second Motion for Leave to File Motion to Compel and for Sanctions Against State and City Defendants and Request for Sanctions Hearing [#32];

- Plaintiff's Third Request to File Motion to Compel, for Hearing and Ruling on Request for Sanctions [#34];

- State Defendants' Motion for Leave to File Motion to Join Frost Bank's Motion to Dismiss Under 28 U.S.C. § 1915 [#42];

- Plaintiff's Fourth Motion to Compel and for Sanctions and for Hearing on Related Pleadings [#43];

- Plaintiff's Second Motion to Compel and for Sanctions Against State and City Defendants and Final Request for Hearing [#47];

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Lift Stay [#49] is **GRANTED IN PART** such that the stay previously issued in this case (as well as the requirement that all

parties seek leave of Court before filing any document in this case) is **LIFTED**.  In all other

respects, the Motion is **DENIED**.

  **IT IS FINALLY ORDERED** that Plaintiff's Motion for Status Conference by District

Judge Only [#48] remains pending before the District Court for its consideration upon the return

of this lawsuit to the District Court for all purposes.

### X.  Instructions for Service and Notice of Right to Object/Appeal

  The United States District Clerk shall serve a copy of this report and recommendation on

all parties by either (1) electronic transmittal to all parties represented by attorneys registered as

a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified

mail, return receipt requested.  Written objections to this report and recommendation must be

filed **within fourteen (14) days** after being served with a copy of same, unless this time period is

modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file

the objections with the clerk of the court, and serve the objections on all other parties.  A party

filing objections must specifically identify those findings, conclusions or recommendations to

which objections are being made and the basis for such objections; the district court need not

consider frivolous, conclusive or general objections.  A party's failure to file written objections

to the proposed findings, conclusions and recommendations contained in this report shall bar the

party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52

(1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to

file timely written objections to the proposed findings, conclusions and recommendations

contained in this report and recommendation shall bar the aggrieved party, except upon grounds

of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 28th day of October, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE